NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| MARC J. NORWOOD, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 6: 06-144-DCR |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| D. L. STINE, et al., | ) | **AND ORDER** |
| | ) | |
| Respondents. | ) | |

\*\*   \*\*   \*\*   \*\*   \*\*

Petitioner Marc J. Norwood, an individual in the custody of the Bureau of Prisons ("BOP") and confined at the Federal Prison Camp in Manchester, Kentucky, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. §2241. This matter is before the Court for screening. 28 U.S.C. §2243; *Demjanjuk v. Petrovsky*, 612 F. Supp. 571 (N.D. Ohio 1985) (citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970), *cert. denied*, 400 U.S. 906 (1970); *accord Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)). For the reasons to be discussed below, this action will be dismissed.

CLAIMS

The Petitioner alleges that he has been denied an interview for a BOP drug treatment program: (1) in violation of his due process rights; (2) in violation of BOP Program Statement 5330.10; and (3) under an invalid policy (Program Statement 5162.04) which was drafted without notice and comment as required by the Administrative Procedures Act ("APA").

THE PETITIONER'S ALLEGATIONS

The Petitioner has submitted a partially completed petition form and an attached self-styled Motion/Preliminary Statement/Facts. The following is a summary or construction of his claims. [Record No. 1]

The Petitioner states that he was convicted of knowingly and intentionally distributing a controlled substance, namely, in excess of 5 grams of mixtures containing cocaine base, in violation of 21 U.S.C. §841(a)(1), in the United States District Court for the Northern District. of Illinois. He further states that the Court found that he did not have possession of a dangerous weapon and that he had accepted responsibility for his conduct. Norwood was sentenced to 120 months' imprisonment on August 30, 2002. He did not appeal.

Norwood alleges that in September of 2005, he contacted Dr. Cynthia Hanson, the prison's Coordinator of a Residential Drug Treatment Program ("RDAP") about his eligibility for the program, contending that his pre-sentence report will document that he has a drug problem. Therefore, he claims that he should be eligible for early release under 18 U.S.C. §3621 which provides that those federal inmates who have been "convicted of a non-violent offense" and have completed a drug rehabilitation program are eligible for up to a one-year reduction in sentence.

Dr. Hanson purportedly responded that Norwood would not be eligible for the RDAP, because he had been convicted of a prior robbery, despite his contention that the conviction was long ago, occurred when he was in college, and was unjust (i.e., "Petitioner was at the wrong

place at the wrong time"). Norwood alleges that the BOP also wrongly denied him an eligibility interview in violation of PS 5330.10, Chap. 2 at 2.

Norwood claims that he exhausted the BOP administrative remedy process in appealing this matter, Administrative Remedy No. 390548, but he does not attach any documents exchanged in the process. He states only that BOP officials at every level of appeal agreed with Dr. Hanson's position and that at the final level of appeal, the Administrator of National Inmate Appeals affirmed on the ground that "Petitioner was not eligible . . . because he must be within 36 months of release."

Norwood challenges the BOP's adherence to the last-36-months-of-the-sentence rule for applying for RDAP as unauthorized. He insists that BOP rules require an eligibility determination to be made when a prisoner requests admission, and there is no time restriction on when that request may be made. He cites Program Statement ("PS") 5330.10, Ch. 2 at 2, and *Wade v. Daniels*, 373 F.Supp.2d 1201 (D.Or. 2005), in support of his position.

Regarding the prior conviction as being a reason to render him ineligible, the Petitioner cites another BOP program statement, PS 5162.04, in which the BOP has purportedly listed certain crimes which it deems to be violent and which disqualify those convicted of any crime on the list. One of the crimes is robbery. However, this program statement has purportedly been held invalid because it was formulated in violation of the APA. Again, the Petitioner cites the *Wade* decision and other case law.

Because he was wrongly denied consideration for the RDAP at his institution, Norwood asks the Court to direct the BOP to grant him an immediate eligibility interview and to deem him eligible for a one-year reduction in his sentence.

## DISCUSSION

Title 18 of the United States Code, Section 3621, governs the imprisonment of persons convicted of federal crimes. In 1990, Congress amended the statute to require the BOP to make substance abuse programs available to its prisoners who have a treatable condition of substance addiction or abuse. Four years later, pursuant to the Violent Crime Control and Law Enforcement Act of 1994, the statute was amended to provide early release as an incentive for prisoner participation in the programs. Since that time, the statute has provided that:

> [t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C. §3621(e)(2)(B). The statute does not define "nonviolent offense," nor establish other criteria for determining eligibility for sentence reduction, thus, leaving it to the agency to interpret the term.

In May 1995, the BOP published a rule, 28 C.F.R. §550.58, and program statement, PS 5330.10, to implement the new early release incentive. Through these provisions, the BOP defined as ineligible all prisoners incarcerated for a "crime of violence." To further clarify the term "crime of violence," on July 24, 1995, the BOP also wrote a new program statement, PS 5162.02, which identified criminal offenses that the BOP considered to be "crimes of violence in all cases." *Id*.

When several courts held that the BOP could not define eligible prisoners convicted of "nonviolent offenses" by listing "crimes of violence" as the BOP had done, the BOP was prompted to revise the regulation, formulating 28 C.F.R. §550.58, effective on October 9, 1997. The 1997 version of the regulation shifted the BOP's attention from the statutory meaning of "nonviolent offense" to interpreting the extent of the BOP's discretionary authority under §3621(e)(2)(B). *Boucher v. Lamanna,* 90 F.Supp.2d 883, 890 (N.D. Ohio 2000). At the same time, the BOP amended the program statements to reflect this change. By using the new language to base its list on the BOP's discretion rather than the earlier definitions of crimes of violence, the BOP corrected the flawed in the 1995 version of 28 U.S.C. §550.58. However, the result was the same: the 1997 rule and program statements excluded exactly the same prisoners from eligibility as were ineligible under the old rules.

The APA requires publication of a substantive rule in the Federal Register (5 U.SC. §553(b)), and this publication must be made no less than 30 days before its effective date (§553(d)). However, the BOP did not publish the regulation in the Federal Register until October 15, 1997. *See* 62 Fed.Reg. 53691 (Oct. 15, 1997). Since the publication of the 1997 regulation did not occur 30 days prior to its effective date, it was not properly promulgated consistent with the APA.

Thereafter, prisoners to whom the 1997 regulation was applied to exclude them from eligibility to the RDAP challenged the regulation as being invalid because the BOP did not follow the APA's notice and comment requirement. The Petitioner cites several cases from the United States District Court for the District of Oregon and the Ninth Circuit in which the courts

held that the BOP could not deny the prisoner eligibility based on an invalid regulation and program statement. Norwood relies on several of these cases, including *Bohner v. Daniels*, 243 F.Supp.2d 1171 (D.Or 2003), *affirmed*, *Paulsen v. Daniels*, 413 F.3d 999 (9th Cir. 2005), and *Wade v. Daniels*, 373 F.Supp.2d 1201 (D. Or. 2005).

The District Court in *Bohner* held that the 1997 regulation could not be used to deny early release because the regulation was not promulgated in compliance with the notice and comment procedures of the APA. The District Court also held that the program statement, PS 5162.04, could not stand as authority, as it merely interpreted the 1997 invalid interim regulation. In *Bohner*, and later in *Wade*, the Court ordered that since the interim 1997 versions were invalid, the petitioners were eligible for early release under the properly promulgated 1995 versions.

However, the challenged 1997 regulation, program statements, and attendant case law are not applicable in this action because the 1997 version was not applied to Norwood. The 1997 version of the regulation was later subjected to the notice and comment requirements of the APA. On December 22, 2000, the BOP made the 1997 interim regulation final without making any changes in it. The regulation reads, in relevant part, as follows:

> §550.58 Consideration for early release.
>
> An inmate who was sentenced to a term of imprisonment . . . for a non-violent offense, and who is determined to have a substance abuse problem, and successfully completes a residential drug abuse treatment program during his or her current commitment may be eligible, in accordance with paragraph (a) of this section, for early release by a period not to exceed 12 months.
>
> (a) Additional early release criteria.

> (1) As an exercise of the discretion vested in the Director of the Federal Bureau of Prisons, the following categories of inmates are not eligible for early release:
>> . . . .
>
>> (iv) Inmates who have a prior felony or misdemeanor conviction for homicide, forcible rape, robbery, or aggravated assault, or child sexual abuse offenses;
>> . . . .

28 C.F.R. §550.58(a)(1)(iv) (2000).

Furthermore, the Supreme Court has now upheld the regulation as "a permissible exercise of the [BOP's] discretion under 18 U.S.C. §3621(e)(2)(B)." *Lopez v. Davis,* 531 U.S. 230, 233 (2001). "Having concluded that the Bureau may categorically exclude prisoners based on their preconviction conduct, we further hold that the regulation excluding [prisoner Lopez] is permissible." *Id* at 244. Thus, under §550.58, the BOP has the discretion to deny early release to all prisoners with a "prior . . . conviction for . . . robbery." 28 C.F.R. §550.58(a)(1)(iv). To the extent that the BOP's decision that the Petitioner was ineligible rested on his prior conviction for robbery, the decision is consistent with the regulation, which has been valid since 2000 and which clearly and categorically precludes all inmates with a prior robbery conviction from receiving a reduction in sentence under 18 U.S.C. §3621(e)(2)(B).

Program Statements

In the earlier decisions on which the instant Petitioner relies, PS 5162.04 was invalidated hand-in-hand with the invalidation of the regulation for failure to meet the APA's notice and comment requirements. However, in the APA, Congress has also directed that the notice requirement does not apply "to interpretative rules, general statements of policy, or rules of

agency organization, procedure, or practice. . . ." 5 U.S.C. §553(b)(3)(A). In *Reno v. Koray,* 515 U.S. 50 (1995), the Supreme Court characterized another of the BOP's program statements as an internal agency guideline which was akin to an interpretive rule that did not require notice and comment under the APA. *Id.* at 61.

In *Dismas Charities, Inc. v. United States Dep't of Justice, Fed. Bureau of Prisons,* 401 F.3d 666 (6th Cir.2005), the Sixth Circuit distinguished substantive rules from interpretative rules. The court stated that, "'[f]or purposes of the APA, substantive rules are rules that create law,' while in contrast '[i]nterpretive rules merely clarify or explain existing law or regulations and go to what the administrative officer thinks the statute or regulation means.'" *Id.* at 679 (quoting *First National Bank v. Sanders,* 946 F.2d 1185, 1188-89 (6th Cir.1991). Furhter,

> The distinction reflects the primary purpose of Congress in imposing notice and comment requirements for rulemaking – to get public input so as to get the wisest rules. That purpose is not served when the agency's inquiry or determination is not "what is the wisest rule," but "what is the rule." The interpretative rule exception reflects the idea that public input will not help an agency make the legal determination of what the law already is.

*Id.* at 680. A rule does not lose its interpretative nature because of its substantial impact or because it takes a new position and departs from a prior interpretation. *Id.* at 681.

The rules in question in *Dismas Charities* were two legal memoranda written by legal counsel for the BOP. The Sixth Circuit determined that the memoranda were interpretative rules and that "[t]he rulemaking requirements of §553 of the APA do not apply to 'interpretative rules.'" *Id.* at 679. The court held that a rule embodying "a pure legal determination of what the applicable law already is does not require notice and comment under APA §553(b)." *Id.* at 682.

The first disputed rule in this case is PS 5162.04. The stated purpose and scope of the program statement is to assist in the implementation of certain policies and programs of the BOP. *See* PS 5162.04 at 1. The program statement requires the denial of benefits if the inmate's underlying offense is deemed a crime of violence *or* is identified by the Director of the BOP as one that precludes receipt of program benefits. *Id.* at 2. This Court concludes that the 1997 version of PS 5162.04 is an interpretive rule, not a substantive rule. The program statement clarifies the statute and existing regulation and explains what the BOP thinks the statute and regulations mean. PS 5162.04 did not and does not make law; rather, it says what the law is. Therefore, the BOP was not required to promulgate the program statement under the APA procedures.

Nor can the Court find that the Petitioner has stated a claim with regard to PS 5330.10, at Chapter 2. This program statement also is interpretive of regulations in effect since 2000 and, therefore, its promulgation did not violate the APA. Further, the Petitioner has claimed, but has failed to establish, a violation thereof. Program Statement 5330.10, entitled <u>Drug Abuse Programs Manual, Inmate</u>, has a Chapter 2, which is entitled *Orientation, Screening and Referral*. Under this portion of the program statement, the BOP describes the screening process which staff must administer ("The screening of each inmate shall have two operational components . . . .") and provides a five-step process which is required of "[d]rug abuse treatment staff." There is no indication in the instant allegations that any portion of Chapter 2 was violated by the BOP.

Regarding this program statement, the Petitioner relies on *Wade*, wherein the District Court stated, "BOP rules require an eligibility determination to be made when a prisoner requests admission into [the drug treatment program], and there are no restrictions on when that request can be made. P.S. 5330.10 Ch.2 at 2." 373 F.Supp.2d at 1202. However, this reliance is misplaced. A simple reading of the provisions of PS 5330.10 reveals that it does not address when a request for eligibility determination is to be made, but describes who is eligible to participate in the RDAP. The scope of Chapter 2 was not to set out a timetable but to instruct staff on deciding which requests may be granted. It is silent as to the proper time of events in the process described therein.

Another regulation (also effective December 22, 2000; 28 C.F.R. §550.56) contains five eligibility requirements that a prisoner should meet to be eligible for RDAP. One of these requirements is the 36-month rule which provides:

> (a) Eligibility. An inmate must meet all of the following criteria for the residential drug abuse treatment program.
>
> > (1) The inmate must have a verifiable documented drug abuse problem.
> > . . . .
> >
> > (4) Ordinarily, the inmate must be within thirty-six months of release.
> > . . . .

28 C.F.R. §550.56(a)(1) and (4). Thus, to the extent that the Petitioner was denied eligibility based on the 36-month rule, it was a decision based upon a properly-promulgated regulation, valid since 2000. Had PS 5330.10 provided for a determination of his eligibility "at any time"

as he suggests, the program statement would have impermissibly conflicted with a promulgated regulation.

Moreover, the opinion in *Wade* is not binding on this Court, nor is it persuasive. Rather, in this Circuit, where the appellate court has found that a BOP interpretive rule interprets the discretion allowed under the statute, the Petitioner has failed to state a claim consistent with *Dismas Charities*. *See Cooper v. Gutierrez*, 2005 WL 3434143 (N.D.W.Va. 2005) (distinguishing 4th Circuit law from *Wade*).

## Regulations

The BOP's 1997 regulations were substantive rules because they effected a change in existing law or policy, §550.58 listing categories of inmates who would not be eligible for early release. The 1997 regulations became effective before the public was given notice or an opportunity to comment on it. After compliance with the notice and comment requirements of the APA, however, and by December 20, 2000, the regulations had been properly promulgated. However, even assuming that the 1997 version of 28 C.F.R. §550.58 was invalid, because of the APA violation or on any other basis, that interim version of 28 C.F.R. §550.58 is only "invalid as to those persons disqualified by it prior to the issuance of the final rule." *Sizemore v. Marberry*, 2005 WL 1684132 at *4 (E.D. Mich. 2005). The Court finds its sister court in *Sizemore* persuasive.

Like Petitioner Sizemore and unlike Petitioner Bohner,[1] Norwood's request was not decided under the interim regulations, but only after the BOP's regulations had become final (*see* 65 Fed.Reg. 80745-49, following notice and an opportunity to be heard). The regulations were final on December 22, 2000, consistent with the "notice and comment" requirements of the APA. It was these new, final, and formally promulgated regulations which were in effect and applied in 2005 when Norwood made his request. For all the foregoing reasons, Norwood is not entitled to relief on the basis of the earlier invalidation of the 1997 regulation or any interpretive program statements.

## Due Process Claim

Petitioner's due process claim fails because neither the Constitution, §3621(e)(2)(B), nor the BOP's regulations created a liberty interest in early release. *Orr v. Hawk,* 156 F.3d 651, 654 (6th Cir.1998). Title 18 of the United States Code, Section 3621, provides only that the BOP "may" grant a reduction in sentence to a prisoner "convicted of a nonviolent offense." 18 U.S.C. §3621(e)(2)(B). Because the sentence reduction is left to the unfettered discretion of the BOP, the statute does not create a constitutionally-protected liberty interest. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983). The loss of the mere opportunity to be considered for discretionary early release under §3621(e)(2)(B) is too speculative to constitute a deprivation of a constitutionally protected liberty interest. Consequently, Petitioner was not deprived of a cognizable harm when and if the BOP denied him a sentence reduction under §3621(e)(2)(B),

---

[1] *Bohner v. Daniels,* 243 F.Supp.2d at 1171, addressed the BOP's 1997 program statement and *interim* regulation, not the final regulation.

and the BOP's denial of a reduction in Norwood's sentence did not deprive him of due process. *Orr v. Hawk,* 156 F.3d at 654 (citing *Kentucky Dep't of Corrs. v. Thompson,* 490 U.S. 454, 460 (1989)). Prisoners have no constitutional or inherent right "to be conditionally released before the expiration of a valid sentence," *Greenholtz v. Inmates of Neb. Penal and Corr'l Complex,* 442 U.S. 1, 7 (1979).

## CONCLUSION

The BOP was not precluded from denying the Petitioner eligibility for early release under 18 U.S.C. §3621(e)(2)(B) because its regulation (28 C.F.R. §550.58) was properly promulgated by the time it was applied to him. Further, PS 5162.04 and PS 5330.10 are interpretive rules which were not required to be promulgated under the APA and were not shown to have been violated. Finally, the BOP's decision did not violate the Petitioner's right to due process because he has no protected liberty interest in early release. Accordingly, the Court being sufficiently advised, it is hereby

**ORDERED** that this action shall be **DISMISSED**, with prejudice. A separate Judgment shall be issued this date.

This 2nd day of May, 2006.



Signed By:
*Danny C. Reeves* DCR
United States District Judge